King *v.* Savage Brick Company, Appellant.

*Will—Devise—Rule in Shelley's case—Remainder—"Children"—Appeals —Quashing appeal.*

Testatrix by her will directed as follows: "Whatever other property I may have at the time of my death, whether real, personal or mixed, I give, devise and bequeath as follows, viz.: To my children if I any have at the time of my death. Should I die without issue then to my sister and my husband equally for life, or, in case of my said husband, until he shall marry again. In case of the death or remarriage of my said husband his share is to go to my said sister and in case of the death of my said sister her share is to go to my said husband. Upon the death of both, the whole to go to my brother, and upon his death to his children absolutely and in fee. If my said brother should die without children, then the whole to go to my cousins absolutely in fee," naming them. *Held,* (1) that the word "children" in relation to the brother was a word of purchase and not a word

of limitation; (2) that the devise to the brother was not an estate tail under the rule in Shelley's case; (3) that the cousins took the estate in fee upon the remarriage of the husband and the death of both sister and brother without the latter leaving children.

In an action of assumpsit brought by the cousins to recover rentals under a mining lease on the property devised as above, the administrator of the brother having written authority to act for the heirs of the brother may be made a party defendant, and if he participates in the case, and takes a joint appeal with the other defendant, the appeal will not be quashed.

Argued March 12, 1906.    Appeal, No. 76, April T., 1906, by defendant, from judgment of C. P. Somerset Co., Feb. T., 1904, No. 91, on case tried by the court without a jury in suit of Elizabeth Lawrence King and Alexander King, Jr.    Devisees of Georgia Edith Manning, deceased, by Alexander King, their father and next friend, v. The Savage Fire Brick Company and Frank Fletcher, Administrator of Charles C. Reamer, deceased.    Before Rice, P. J., Porter, Morrison, Henderson, Orlady, Beaver, and Head, JJ.    Affirmed.

Assumpsit for rentals.

The case was tried without a jury under the act of April 22, 1874, by Kooser, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in entering judgment for plaintiff.

*J. H. Longenecker*, with him *Frank E. Colvin* and *Moses A. Points*, for appellants.—The rule in Shelley's case applies : Pott's App., 30 Pa. 168 ; Brinton v. Martin, 197 Pa. 615 ; Simpson v. Reed, 205 Pa. 53 ; Pifer v. Locke, 205 Pa. 616 ; Boyd v. Weber, 193 Pa. 651 ; Sheeley v. Neidhammer, 182 Pa. 163 ; Mason v. Ammon, 117 Pa. 127 ; Blair v. Miller, 30 W. N. C. 486 ; Allen v. Markle, 36 Pa. 117 ; Guthrie's App., 37 Pa. 9.

We submit that the words "if my brother should die without children, then," over, import an indefinite failure of issue : Eichelberger v. Barnitz, 9 Watts, 447 ; Hackney v. Tracy, 137 Pa. 53 ; Graham v. Abbott, 208 Pa. 68 ; Corrin v. Elliott, 23 Pa. Superior Ct. 449 ; Beilstein v. Beilstein, 194 Pa. 152 ; Buzby's App., 61 Pa. 111 ; Coggins's App., 124 Pa. 10 ; Rewalt v. Ulrich, 23 Pa. 388 ; Hogg's Est., 27 Pa. Superior Ct. 428 ; McAlpin's Est., 211 Pa. 26.

*Ernest O. Kooser* and *Alexander King*, with them *Koontz & Ogle*, for appellee.—Plaintiffs took a fee: Mulliken v. Earnshaw, 209 Pa. 226; Stoner v. Wunderlich, 198 Pa. 158; Simpson v. Reed, 205 Pa. 53; Graham v. Abbott, 208 Pa. 68; Vilsack's Est., 207 Pa. 611; Fowler's App., 125 Pa. 388; Guthrie's App., 37 Pa. 9; Keim's App., 125 Pa. 480; Cote v. Von Bonnhorst, 41 Pa. 243; Curtis v. Longstreth, 44 Pa. 297; Crawford v. Forest Oil Co., 208 Pa. 5; Coursey v. Davis, 46 Pa. 25; Affolter v. May, 115 Pa. 54; O'Rourke v. Sherwin, 156 Pa. 285; Robins v. Quinliven, 79 Pa. 333; Cameron v. Coy, 165 Pa. 290; Steinmetz's Est., 194 Pa. 611.

A limitation over by will to survivors or persons in being after the death of the first taker, raises a strong presumption that testator did not contemplate an indefinite failure of issue: Steinmetz's Estate, 194 Pa. 611; Johnson v. Currin, 10 Pa. 498; Mifflin v. Neal, 6 S. & R. 460.

OPINION BY HEAD, J., April 23, 1906:

The motion made at bar to quash this appeal cannot be allowed. The defendant Fletcher became a party to the record by the compulsory process of the court below without objection or exception by plaintiffs. He thereafter joined in the several agreements made by the parties to expedite a trial on the merits and finally obtained and, as we understand it, filed a paper fully empowering him to act for and represent the heirs at law of Charles C. Reamer, deceased. No harm has resulted or can result to the plaintiffs. The motion is therefore denied.

Georgia Edith Manning (née Reamer) was the owner of the undivided one-fifth of the tract of land from which came the rent or royalty constituting the fund now in controversy. She died in 1893, having first made her will. At the time of its execution in 1892 she was about twenty-four years of age and had been married for about two years. She left to survive her a husband, Van H. Manning, but no children; three sisters, Etta, Ida and Mary (a lunatic), and one brother, Charles C. Reamer. After having devised in fee to her brother Charles a separate tract of land, and given to her sister Ida certain moneys, she further provided in her will as follows:

"Whatever other property I may have at the time of my death, whether real, personal or mixed, I give, devise and be-

.queath as follows, viz : To my children if any I have at the time of my death. Should I die without issue then to my sister, Etta N. Reamer, and my husband, Van H. Manning, equally for life, or, in case of my said husband, until he shall marry again. In case of the death or remarriage of my said husband his share is to go to my said sister and in case of the death of my said sister her share is to go to my said husband. Upon the death of both, the whole to go to my brother Charles C. Reamer and upon his death to his children absolutely and in fee. If my said brother should die without children, then the whole to go to my cousins, Alexander King, Jr., and Lizzie Lawrence King, absolutely and in fee."

The testatrix died childless. Her surviving husband remarried and thus lost his entire interest under the will, as was held by the Supreme Court in Fletcher v. Hoblitzell, 209 Pa. 337. Her sister Etta died and her brother Charles C. Reamer later died childless.

The present plaintiffs claim to be the owners in fee of the undivided one-fifth of the land of which testatrix died seized, under the last clause of the will cited. The appellants, construing the will as having given to Charles C. Reamer a fee tail, enlarged into a fee simple by the act of assembly, contend that the devise over, after his death, was nugatory and that plaintiffs took nothing thereby.

In attempting to apply to a case in hand some of the many technical rules of construction formulated by courts to define certain words and phrases frequently used in wills, we are sometimes led to minimize the force of that primary and paramount rule which overrides all others ; which is universal in its application and in aid of which only may the others referred to properly be applied. Mr. Justice MESTREZAT in Stoner v. Wunderlich, 198 Pa. 158, tersely states this cardinal rule thus : " Our first duty is to ascertain the intention of the testator which must be carried out, unless in so doing it contravenes some established rule of law."

Speaking of one of the technical rules or canons of construction already referred to, Chief Justice MITCHELL in Mulliken v. Earnshaw, 209 Pa. 226, says : " Like all artificial rules it had the constant tendency to become an arbitrary fetter instead of a mere instrument for the ascertainment of the testator's

intent.    The policy of the later cases in this state, if not every-
where, is to get back to the true rule of looking only to the
actual intent.    There is no sound reason in the nature of things
why the actual meaning of the person using the words should
not be sought in the case of a will exactly as it is in the case
of a contract. . . . .'Every will,' said Chief Justice SHARS-
WOOD in Fox's Appeal, 99 Pa. 382, 'must be construed from its
"four corners" to arrive at the true intention of the testator.
Decisions upon other wills may assist but cannot control the
construction."'

Passing by, then, all subordinate and arbitrary rules of con-
struction, at least until the necessity for their use becomes ap-
parent, and keeping steadily in view the fundamental principle
by which we are to be controlled, we turn to an examination
of the entire section of the will already quoted.    If from such
examination we can ascertain with reasonable certainty a gen-
eral intention, dominating the mind of the testatrix and guid-
ing and directing the disposition of her estate, from the primary
devise to her own children, if any, to the final one in favor of
the appellees, through the several contingencies contemplated
and mentioned by her, then it only remains for this court to
effectuate and enforce such intention.

As the testatrix made no effort to control the disposition of
her property beyond the devise to the two appellees we may
fairly assume that her expectation was that if the estate came
to them at all, it would come during the period of their natural
lives.    As they were living when the will was made in 1892,
and are still minors suing by their next friend, they must have
been quite young at the date of the will.    That they would
outlive the several devisees named before them, save only the
children of Charles C. Reamer, if any, was therefore no im-
probable expectation on the part of the testatrix.    But as they
could take only after the happening of the several contingencies
specified, it would seem to follow that, at least in the contem-
plation of the testatrix, all of the contingencies, if they hap-
pened at all, would happen likewise within the period of the
natural lifetime of the two ultimate devisees, then in full life.
It cannot therefore be convincingly argued, if we are to ascer-
tain the intention of the testatrix from the "four corners'" of
her will, that we are forced to the conclusion that she predicated

the estate she desired to give to the appellees on any contingency which, as she viewed it, would not happen, if it happened at all, within a fixed and definite period.

Taking up, then, and examining more closely the several provisions of the will we may safely say that the first objects of the bounty of the testatrix were her own children, if any she left to survive her. They would have taken her entire estate in fee and the remaining portions of the will would have been inoperative. With her death, childless, the one barrier to the operation of the next clause was removed and the life estates to the husband and sister came into possession. By the remarriage of the former and the death of the latter the devise to Charles C. Reamer became effective: Fletcher v. Hoblitzell, 209 Pa. 337.

" Upon the death of both (the life tenants) the whole to go to my brother Charles C. Reamer and upon his death to his children absolutely and in fee. If my said brother should die without children " then over. It is earnestly contended in the elaborate and scholarly brief submitted by the learned counsel for the appellants that Charles, by this devise, took an estate in fee tail which, by operation of the act of 1855, became a fee simple. The essence of the argument may be stated thus: The testatrix in the first part of the entire section of her will hereinbefore first quoted, used the terms " children " and " issue " interconvertibly. Therefore the latter should be substituted for the former wherever the word " children " occurs. Prima facie the word " issue " means " heirs of the body." We would then have a devise to Charles and the heirs of his body which, under the rule in Shelley's case, would vest in him an estate tail which our act enlarges into a fee simple. We thus have a devise to Charles which as just shown was a fee, with a devise over to the appellees predicated on his dying without issue, or in other words on " an indefinite failure of issue " of the first taker, which again would vest a fee tail in Charles under the rule laid down in Eichelberger v. Barnitz, 9 Watts, 447, and the long line of cases following it. That rule is thus stated by Mr. Justice SERGEANT : " If a devise be made to one in fee, and if he die without issue, or on failure of issue, or for want of issue, or without leaving issue, then over to another in fee, the estate of the first taker is a fee tail, . . . . and any devise

over after the failure of such, must of course be after an indefinite failure of issue, and bad as an executory devise."

Thus by the simple but ingenious contrivance of substituting the word "issue" for the word "children" in the devise we can use the rule in Shelley's case to get rid of the express devise to the children of Charles, and by the application of the doctrine of Eichelberger v. Barnitz we render invalid and void the devise over to the appellees on the death of Charles without children. This looks more like a reconstruction of the will than a construction of its language.

Taking the language actually used by the testatrix, however, it is clear that the rule in Shelley's case cannot be applied to the devise to Charles because the remainder is not limited directly or indirectly to his heirs, either in fee or in tail, but is vested in a particular class designated by an apt word of purchase, viz: " children."

That the word " children " is a word of purchase and is always so regarded, unless it plainly appears, from the context or the will generally, that the testator intended to use it in the sense of " issue," as standing for the " whole line of direct succession," is abundantly established by the authorities, some of which will be cited later.

Nor can the rule of Eichelberger v. Barnitz be properly applied to assist in the construction of the clause now under consideration for several reasons, and primarily because there is no devise in fee in the first instance to Charles. To attempt to use a rule of construction to create an estate in fee when the rule itself requires, as the primary condition of its existence, that a fee has been given to the first taker, is a clear case of arguing in a circle. Had the devising clause stopped with the name of the brother there would have been a good devise to him in fee. If there had followed a devise over to the appellees " upon his death without issue," and the will had fixed no period within which the death without issue should occur, then we would have the conditions calling for the application of the rule invoked. But here we have an express devise to the children of Charles upon or after his death, if such children should survive him. They would have taken the estate just as certainly as would the children of the testatrix herself under the earlier clause, had she left any. And they would

have taken, not through or under Charles in any way, but directly from the testatrix, just as he himself took on the termination of the previous life estates.

In Crawford v. Forest Oil Co., 208 Pa. 5, the language of the will of William Crawford was, "and I will and devise to my son Matthew and his children, my old farm," etc. Mr. Justice BROWN construing this devise says : " The word ' children ' is a word of purchase and not of limitation, and describes the persons who take. . . . The rule as laid down by Lord HARDWICKE in Buffar v. Bradford, 2 Atk. 220, is, that ' children, in their natural import, are words of purchase, and not of limitation, unless it is to comply with the intention of a testator, where the words cannot take effect in any other way.' . . . . If the children of Matthew took directly from their grandfather, what was the estate given to their father and what passed to them ? " After reviewing the authorities it was held that under the devise quoted the father, Matthew, took a life estate, his children taking the fee in remainder. Much more clearly does the present will declare the intention of the testatrix to give to her brother Charles but a life estate with remainder in fee to his children, if any, and failing such children then to the appellees.

But even if we regard the estate given primarily to Charles as a fee and not a life estate, still the rule contended for could not apply because the limitation over was not on failure of issue of the first taker, but of children only. In Hill v. Hill. 74 Pa. 173, after stating the rule that a devise in fee with a limitation over upon the death of the first taker, leaving no issue, reduces the estate in fee to an estate tail, Mr. Justice SHARSWOOD says : " On the other hand, it is equally clear that if there is anything in the will which indicates an intention of the testator that this word ' issue ' shall not mean ' issue definitely ' but ' children,' then this construction does not apply : " Stoner v. Wunderlich, supra. Much more clearly again may we say that the rule cannot apply where the testator expressly predicates the devise over upon the failure of " children " of the first taker, and does not use the word " issue " at all. Moreover, as we have already seen, the will itself fixes a definite period of time within which the death of Charles C. Reamer " without children " should occur, viz : within the

lifetime of the two ultimate devisees, and for this reason again the limitation over was not predicated on an indefinite failure of issue. All such cases were said in Eichelberger v. Barnitz to be well-recognized exceptions to the general rule there laid down : Smith on Executory Interests, 584. We can discover nothing in this devise to distinguish it in principle from that construed in Curtis et al. v. Longstreth, 44 Pa. 297, where it was held that a devise to Malcolm " for and during his natural life . . . . and after his decease the same to go to his children; but should he die without issue " then over, gave to Malcolm but a life estate. The language of Mr. Justice STRONG would seem to fit the case in hand exactly : " It is plain that the testator intended that the remaindermen (the children) should take as purchasers, and not as heirs, unless a contrary intent is deducible from the last clause of the words of the gift. He described them by an apt word of purchase, i. e., children, and therefore the first taker had only an estate for life. Had there been no gift of a remainder to children, the limitation over on the death without issue would have given him an estate tail by implication, but there having been an intermediate gift of a remainder to children of the devisee of the particular estate, the gift over on the death without issue must be construed as a gift on death without such issue as those previously mentioned, to wit : children."

Inasmuch, then, as neither the rule in Shelley's case, nor that declared in Eichelberger v. Barnitz, can be invoked to enlarge the estate given to Charles C. Reamer to a fee, it follows that he took but a life estate, and we so hold. Many other pertinent authorities are cited in the exhaustive opinion of the learned court below which so ably vindicates the judgment entered, but we can see no advantage in further elaborating our conclusion. As Charles C. Reamer took but a life estate, neither his administrator nor his heirs at law can have any interest in the fund in court which has accumulated wholly since his death, and the right of the plaintiffs to recover would be complete.

Judgment affirmed.